**RUTLEDGE, ET, Plaintiffs-Appellees, v HOFFMAN, ADMR., Defendant-Appellant.**

Ohio Appeals, First District, Butler County.

No. 926.   Decided July 24th, 1947.

130

Williams, Fitton & Pierce, Hamilton, for plaintiffs-appellees.

Condo & Walsh, and Andrews & Weiss, all of Hamilton, for defendant-appellant.

## OPINION

By MATTHEWS, PJ.

This is an appeal on questions of law from a judgment in favor of plaintiff for breach of contract.

The plaintiff alleged that the defendant's decedent on November 1st, 1911, orally promised to pay the plaintiff's decedent, who was her sister, the sum of $4000.00, in consideration of her agreement not to institute an action to contest the will of Mary Barbara Hoffman, their mother, and not to make any effort to vacate or set aside a deed, conveying a certain farm from their mother to the defendant's decedent. The plaintiff alleged that certain partial payments had been made commencing in 1930 and ending on October 6th, 1939. The judgment appealed from is for the unpaid balance with interest at 5% per annum.

The defendant denied the making of the promise, and in addition alleged the bar of the statute of limitations. By objection to testimony, the defense of the statute of frauds was interposed.

Only one witness (Robert Matson) testified to the making of the promise. He was a nephew of these decedents, and because of the pendency of an action by the administrator of his mother's estate on a similar promise alleged to have been made to his mother it could be, and is, argued that he is an interested witness. However, the trial judge, sitting without a jury, has placed his stamp of approval upon his credibility, and there was no countervailing testimony offered. There was corroborating testimony.

But it is said that the testimony fails to show the terms of a contract and, perhaps, fails to show the animus contrahendi. We think both clearly appear. We observe here that seldom, if ever, does the evidence in proof of an oral contract

present its terms in the exact words of offer and acceptance found in formal written contracts. And no such precision is required. It is sufficient if the intent is disclosed by word, deed, act, or even silence. Circumstantial evidence is as available to prove a contract as it is to prove a crime. In 12 Am. Jur., 518, et seq, this fundamental rule is stated:

"In the absence of a statute requiring a contract to be evidenced in a certain way, it is ordinarily unnecessary to reduce the agreement to formal language, either written or oral. The expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract. Assent may be manifested by letters, telegrams, or telephonic conversation. Assent is sometimes indicated by silence or inaction. Even though the promise of one of the parties to a bilateral contract is not stated expressly therein, such promise is sometimes implied from the nature or terms of the contract. Frequently, it happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it is manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied."

The evidence discloses that shortly after the death of the husband of Mary Barbara Hoffman in 1889, she executed the will and at the same time certain deeds conveying different parcels of real estate to different ones of her children, including the plaintiff's and defendant's decedents. However, these deeds were left with the scrivener and never delivered or recorded during the lifetime of Mary Barbara Hoffman, and the fact of the existence of the will and deeds was not disclosed until after her death in 1911, when the deeds were recorded and the will probated. It was then that the dispute arose which was settled by the contract which is the basis of this action.

Robert Matson testified that in 1911 he was 24 years old, unmarried, and living at his mother's home, that after the death of his grandmother, Mary Barbara Hoffman, he took his mother (Mary B. Matson) and his aunt, Mary Rutledge, to the home of his aunts Annie and Louisa Hoffman, and was present during a conversation among them on that and several other occasions. Among other things, he said:

"Q. Can you remember the substance of what was said by the people attending that meeting?

"A. They weren't satisfied the way the will was.

"Q. Did they say they weren't satisfied?

"A. My mother and Aunt Mary.

"Q. Did they say that?

"A. Yes.

"Q. And they expressed dissatisfaction?

"A. Sure.

Court: Why don't you say your mother said she wasn't satisfied?

"A. That is what she said.

"Q. What did Mary Rutledge say about the will of your grandmother and deeds your grandmother made?

"A. They weren't satisfied and Uncle George Hoffman wasn't satisfied. .

"A. George Hoffman said that and Uncle George talked to Aunt Louise and Aunt Annie and they said he was up in the air and wasn't satisfied.

"Q. After your mother and Mary Rutledge expressed dissatisfaction with the will and deeds, what did your Aunt Anna say?

"A. She said she wouldn't want to upset the will, she promised the two girls $4000.00 a piece—that is my mother and Aunt Mary Rutledge.

"Q. The conversation was all three of them weren't satisfied?

"A. They kept talking on there, they said George wanted $9500.00 and mother and Aunt Mary—they promised them $4000.00.

"Q. You aren't to say that—what did they say? What did Anna and Louisa say concerning the $4000.00, if anything?

"A. They talked matters over, they knew they weren't satisfied.

"Q. What else did they say?

"A. They come to agreement, they talked it over and come to agreement. They had more than one meeting, they had several meetings.

"Q. You stated your mother and Mary Rutledge expressed at this meeting dissatisfaction at the way in which the will disposed of the estate and the deeds and I think you stated also Anna Hoffman said in that meeting George Hoffman was also dissatisfied?

"A. That is right.

"Q. What else did Anna and Louisa Hoffman say in that connection at that time—you are not expected to say the exact words—you are expected to remember to testify if you can the substance of what was said?

"A. They had several meetings and talked this matter over and the only thing I can say—

"Q. What did they say at this one meeting?

"A. They said about dividing the place so they can divide in a way they wouldn't go to court with it.

"Q. How did they propose to do that—what did they say?

"A. They would go ahead—you want me to bring that out —and give George Hoffman $9500.00 and Mother and Aunt Mary $4000.00 a piece."

We think it is clear from this testimony that Mary Rutledge, Mary B. Matson and George Hoffman, all children of Mary Barbara Hoffman, were dissatisfied with the disposition of her estate, as made by the will which had just recently been probated and the deeds which had been recorded, of the existence of which they had not known until after the death of Mary Barbara Hoffman. They sought an interview with their sisters, Annie and Louisa Hoffman, whom they thought were unduly favored by said disposition. As a result of that and succeeding interviews, Annie and Louisa Hoffman agreed to pay George Hoffman $9500.00 and $4000.00 each to Mary Rutledge and Mary B. Matson, and they, George Hoffman, Mary Rutledge and Mary B. Matson, agreed "they wouldn't go to court with it," which, of course, meant, and means that they would leave Annie Hoffman and Louisa Hoffman undisturbed in the possession and ownership of the property conveyed to them by the will and deed of Mary Barbara Hoffman.

This testimony was corroborated by testimony of witnesses as to the payments made on account of this obligation during the years and by conversations between the parties and statements made by Annie and Louisa Hoffman to others. If this testimony is believed—and the trial judge did believe it—the promise of 1911 and its obligation remained fresh in the minds of the parties during all the intervening years. There is further corroboration in the receipt given by George Hoffman upon the payment of $9500.00 to him and receipt given by Mary Rutledge upon payment of $1500.00 to her, and by notations upon tax receipts showing payment of Mary Rutledge's taxes by Annie and Louisa Hoffman.

The contract thereby created was one of mutual promises, a bilateral contract. The promise of Annie and Louisa Hoff-

man required them to perform the affirmative act of paying money, whereas, the promise of George Hoffman, Mary Rutledge and Mary B. Matson was negative in its nature. They agreed to do nothing to disturb the situation created by the probate of the will and the recording of the deeds. They have performed their promise. They filed no action to contest the will or to set aside the deeds. On the other hand, Annie and Louisa Hoffman did not fully perform their promise.

But it is said that the testimony tends more to show a promise based on love and affection without any intention to enter into a binding contract. That does not seem to be a normal construction, and the trial judge did not so construe it.

It is true that the disputed will and deeds had been in existence for more than 20 years when their validity was questioned, but those questioning their validity had just learned of their existence by the probate of the will and the recording of the deeds. There is a suggested strangeness in the secrecy surrounding the existence of these deeds and will, but the record is devoid of any evidence indicating the basis upon which it was intended to contest their validity. On the other hand, the record carries no suggestion of fraud or lack of good faith in the assertion of George Hoffman, Mary Rutledge, and Mary B. Matson, or any one of them, that the validity of the will and deeds could be successfully contested by them. It is not essential to the validity of a promise made to settle a disputed claim that it be made to appear that the claim is valid and incontestable. It is sufficient if it is asserted in good faith, and, of course, good faith will be presumed in the absence of countervailing circumstances. In 17 O. Jur., 112, it is said: The presumption of law is, until rebutted, that one acts honestly."

In Blount v Dillaway, 17 L. R. A., (U. S.) 1036 (199 Mass. 330, 85 N. E. 477) the court held, as stated in the syllabus, that:

"The promise by one who in good faith intends to contest a will for a cause which does not appear to him to be vexatious or frivolous, not to do so, is a sufficient consideration for a promise to let him share in the estate, without the necessity of showing that the promissor had reasonable cause to believe that he had a fair chance of succeeding in the contest."

See, also, annotation to case of Re Probate of the Will of Frances Julia Cook, Deceased, 55 A. L. R. 806, at 815, et seq.; also, 41 O. Jur. 448.

So we are of the opinion that there is abundant evidence to sustain the conclusion of the trial court that there was a promise by Annie Hoffman to pay $4000.00, and that this promise was supported by a valuable consideration substantially as alleged in the amended petition.

The appellant asserts that as the promise was oral and no note or memorandum signed by Annie Hoffman was produced, recovery is prevented by the statute of frauds. It is claimed a recovery violates the provisions of §8621 GC, in two respects —(1st) it permits a recovery upon an oral contract for the transfer of an interest in real estate, and (2nd) upon a contract not to be performed within one year from the making thereof.

In our view, the statute has no application. If it applied originally to the promise of Mary Rutledge, it could have no application, after she had fully performed, to the promise of Annie Hoffman to pay money. On this subject, it is said in Restatement of Law of Contracts, Sec. 219:

"If all promises in a contract which are within the Statute are fully performed the performance has the same legal operation as if the Statute had been satisfied."

And also, in Sec. 221, it is stated:
"Where a contract consists of one or more promises unenforceable because of the Statute, and one or more promises which are not within it, the latter are unenforceable so long as the former remain unperformed or unenforceable but no longer; * * * "

The defense of the statute of limitations was also interposed, but there was proof of part payment, which tolled the running of the statute and prevented the bar of lapse of time.

Although not specifically assigned as error, it is claimed that the court erred in sustaining an objection to a question on cross-examination of one of plaintiff's attorneys as to whether he did not have a "contingent fee contract in this case." This witness was one of the counsel of record and was participating in the trial. It had already been developed on cross-examination that he had been attorney for many members of the Hoffman family, including Annie and Louisa Hoffman and their estates before the controversy arose among them, but had disassociated himself before the institution of this action. He had testified to various conversations that had taken place between Annie and Louisa Hoffman, and others,

in which they recognized the existence of the obligation. His testimony was, therefore, corroborative of that of the witness who had testified to the making of the contract. There was a similar admission testified to by another witness.

We assume that the terms of the employment of the witness was a proper field of cross-examination, but in this case it had already been made clear that he was employed and interested in the success of the plaintiff. In weighing his testimony the court could properly take that into consideration. If that would not detract from its weight, it doesn't seem to us that the fact that his fee was to be contingent would destroy his credibility. There was no countervailing evidence. We are especially of this opinion, in view of the fact that this was not a trial to a jury, but to the court, of which the attorney was an officer.

In 3 Am. Jur., 536, it is said: "Matters relating to the impeachment of a witness are also discretionary, and, hence, not reviewable in the absence of an abuse of such discretion."

In 2 O. Jur., 717, it is said:

"The extent to which cross-examination may be carried and the limitations which may be imposed thereon, also rest largely in the sound discretion of the trial court. Accordingly the question to be determined upon review of its action in this respect is merely whether such discretion has been abused to the substantial prejudice of the reviewing party."

We hold that it does not appear that the refusal of the court to allow the witness to answer this question operated to the prejudice of the appellant, and is, therefore, no ground for the reversal of this judgment.

We find no prejudicial error in the record and the judgment is, therefore, affirmed.

HILDEBRANT, J, concurs in Syllabus, Opinion and Judgment.

### DISSENTING OPINION

By ROSS, J.

I dissent from the majority opinion, for the reason that the factual conclusions stated therein are not supported by the record. In the amended petition it is stated that the decedent of defendant (Anna Eliza Hoffman) agreed to pay the decedent of plaintiff, Mary Rutledge, $4000.00, "in consid-

eration of the promise and agreement by said Mary Rutledge, deceased, who was the sister of Anna Eliza Hoffman, deceased, not to institute any action to contest the will of Mary Barbara Hoffman, the mother of said Anna Eliza Hoffman and said Mary Rutledge, and not to make any effort to vacate or set aside a deed from said Mary Barbara Hoffman to said Anna Eliza Hoffman conveying to her the farm in Fairfield Township, Butler County, Ohio, of which Anna Eliza Hoffman died seized. By the terms of said agreement, any and all deferred payments of said amount of $4,000.00 were to bear interest at the rate of five per cent per annum." It is further alleged that plaintiff's decedent fully performed her promise and that certain payments were made by defendant's decedent, and that a balance remains due for which judgment is prayed.

Now this constitutes the allegation of a specific, definite contract, embodying certain terms and legal obligations. In the majority opinion is set out or noted the evidence which it is asserted substantiates this contract.

It is doubtful whether such evidence even sustains a justifiable conclusion that **any** contract was entered into by the parties. Certainly, it is only by recourse to speculation and conjecture that the **terms of** the contract found to exist can be identified and the legal obligations alleged shown to exist.

The majority opinion states that the record contains **circumstantial evidence** sustaining such result.

In **L. S. & M. S. Ry. Co. v Andrews, Admr., 58 Oh St 426,** it is stated in the syllabus:

"In the absence of direct evidence in its support, an allegation that one sustained injuries by reason of the negligence of the defendant is not sustained by proof of circumstances from which the fact that his injuries were so sustained is not a more natural inference than any other."

What are the circumstances proved?

(1) The plaintiff's decedent was not satisfied with the disposition of her mother's estate, as disclosed by the will and deeds of her mother.

(2) A number of family conferences were held.

(3) Court action was discussed.

(4) Some agreement between the heirs of the deceased mother was reached.

(5) No action to contest the will or set aside the deeds was ever filed.

(6) The defendant's decedent from time to time paid certain obligations of plaintiff's decedent.

138

(7) Some thirty-two years elapsed from the time the "contract" is alleged to have been made until suit was filed thereon.

(8) No specific demand was ever made by plaintiff's decedent upon defendant's decedent in which a legal obligation was asserted as the basis for a request for money.

If there is to be recovery in this case, it must be because a legal obligation was assumed by defendant's decedent, which has not been performed.

It is apparent from the meagre evidence in the record that the only justifiable inference is that the defendant's decedent did consider herself under an obligation to pay something to plaintiff's decedent, but it is just as fair and reasonable an inference from such evidence that such obligation was merely a moral obligation to equalize the distribution of the mother's estate as it is that such obligation constituted a legal basis for this action.

Speculation and conjecture can never reach the status of **circumstantial evidence,** nor can difficulty in securing proof take the place of proof.

While the statute of frauds may not have a controlling influence upon the issues here presented, certainly, the lapse of time, the absence of any writing, the indefinite character of the evidence presented, the family relationship of the parties, all should cause a court to scan with close scrutiny the evidence advanced as supporting the contention that the specific contract alleged in the petition has been proved.

My conclusion is—that as a matter of law, there was no substantial evidence offered at the trial justifying the conclusion that either the decedent of plaintiff or defendant ever assumed any legal obligation to do or refrain from doing any specific thing, and that judgment should be here rendered for the defendant.