DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Complete Auto Auction ("CAA"), d.b.a. County Car Credit, appeals from the Summit County Court of Common Pleas' judgment granting a directed verdict in favor of the appellee, Automotive Finance Corporation ("AFC"). We reverse.
On February 2, 1995, CAA entered into a Motor Vehicle Floorplan and Security Agreement with AFC. Pursuant to the agreement, AFC advanced funds to CAA to use in the purchase of used vehicles. Paragraph 5 of the agreement provides that AFC is granted a lien and security interest in "any and all Vehicles * * * now or hereafter held in [CAA's] inventory, together with the additions, and accessions, accessories, replacements, and proceeds thereof[.]" Pursuant to Paragraph 2.3 of the agreement, CAA agreed that within forty-eight hours after disposing of any vehicle, it would repay AFC to the extent of any obligation owed to AFC for that vehicle. Paragraph 10 provides that AFC may repossess the collateral without giving CAA notice as a remedy to CAA's default.
In May of 1996, CAA sold two vehicles that it had obtained under the floorplan agreement and tendered two checks to AFC. They totaled $9,670.00. One check was dated May 23, 1996, and the other check was dated May 24, 1996. The two checks were deposited twice and returned twice for insufficient funds. According to CAA, CAA and AFC agreed to a "swap-out." On June 13, 1996, AFC took nine vehicles that were in the possession of CAA.
On June 25, 1996, CAA filed a complaint against AFC for conversion of the nine used automobiles. On March 10, 1997, a jury trial commenced. At the close of CAA's case, AFC moved for a directed verdict. The trial court directed a verdict in favor of AFC on all issues except the issue regarding whether the parties had agreed to a swap-out. At the close of all the evidence on March 12, 1997, AFC moved for a directed verdict. The trial court directed a verdict in favor of AFC and discharged the jury.
CAA timely appeals the judgment of the trial court and raises three assignments of error. We have rearranged CAA's assignments of error for ease of discussion.
 ASSIGNMENT OF ERROR II
The trial court erred when it granted [a] directed verdict in favor of Appellee when it held that reasonable minds could not [have] concluded that Appellant and Appellee had entered into a new contract by virtue of the exchange of collateral.
CAA's second assignment of error alleges that the trial court erred by directing a verdict in favor of AFC because the parties entered into a swap-out agreement. Construing the evidence in a light most favorable to CAA, we find that reasonable minds could differ regarding the existence of a swap-out agreement.
Civ.R. 50(A)(4) sets forth the standard for granting a directed verdict:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. When ruling on a motion for a directed verdict, the trial court may not weigh the evidence or consider the credibility of witnesses. Id.
See Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 137. A trial court must simply determine whether the plaintiff has submitted some evidence going to each of the essential elements of the plaintiff's claim. Id. See O'Day v. Webb (1972), 29 Ohio St.2d 215,220. "A motion for a directed verdict tests the legal sufficiency of the evidence," and an appellate court reviews the trial court's judgment de novo. Campbell v. Colley (1996)113 Ohio App.3d 14, 18, appeal not allowed (1996), 77 Ohio St.3d 1494.
In order for a valid contract to exist, there must be an offer and an acceptance. Noroski v. Fallet (1982) 2 Ohio St.3d 77,79; Isquick v. Classic Autoworks, Inc. (1993), 89 Ohio App.3d 767,772. There must be a "meeting of the minds." Id. The intent to contract and the terms of an oral agreement are disclosed by the words and conduct of the parties. Rutledge v.Hoffman (1947), 81 Ohio App. 85, 87. Parties manifest their mutual assent either by making a promise or by beginning or rendering performance. Ford v. Tandy Transp., Inc. (1993),86 Ohio App.3d 364, 380. Silence or a failure to act may constitute a manifestation of assent. Id. See Rutledge v. Hoffman,81 Ohio App. at 87.
CAA presented a witness, Ernest Bozikis, who testified that a swap-out agreement was created and executed. AFC's witnesses testified that they offered CAA a swap-out, but there was never an acceptance. Pursuant to Civ.R. 50(A), we look at the evidence in a light most favorable to CAA, the non-moving party.
CAA gave AFC one check dated May 23, 1996, and one check dated May 24, 1996, for two vehicles it had purchased pursuant to the floor plan agreement. The two checks were deposited twice and returned twice for insufficient funds. On May 28, 1998, Mr. Martin of AFC offered a swap-out of titles to cover the two checks. Mr. Ernest Bozikis, Chief Operations Officer of CAA, responded "Let me see if I can get the money together here in the next couple of days; and if not, I will take the swap out." Mr. Bozikis never came up with the funds. A few days later, Mr. Bozikis turned seven titles over to AFC. AFC did not reject the titles. AFC returned the two insufficient funds checks to CAA by mail. On June 13, 1996, AFC took nine vehicles that were in the possession of CAA.
Upon a review of the evidence and construing the evidence in a light most favorable to CAA, the non-moving party, we find that reasonable minds could come to different conclusions regarding whether a "swap-out" agreement was created and existed between the parties. The trial court erred by directing a verdict in favor of AFC. CAA's second assignment of error is sustained.
 ASSIGNMENT OF ERROR I
The trial court erred to the prejudice of Plaintiff Appellant in its basic analysis of the case when it determined that the appropriate method of trying the case was to consider first whether repossession was permissible and second whether the parties entered into a new contract.
 ASSIGNMENT OF ERROR III
The trial court erred when it granted directed verdict as to commercially unreasonable sale.
Because the second assignment of error is dispositive, we need not consider CAA's first and third assignments of error. See App.R. 12(A)(1)(c).
CAA's second assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellee.
 Exceptions. _________________________________ LYNN C. SLABY, FOR THE COURT
REECE, J.
DICKINSON, J., CONCUR