UNION SAVINGS BANK, Appellee,

v.

WHITE FAMILY COMPANIES, INC., et al., Appellants.

[Cite as *Union Sav. Bank v. White Family Cos.,*
*Inc.*, 183 Ohio App.3d 174, 2009-Ohio-2075.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 22722 and 22730.

Decided May 1, 2009.

Harry J. Finke IV, for appellee.

Robert B. Berner, and Matthew T. Schaeffer, for appellant White Family Companies.

Douglas W. Geyer and David D. Herier, for appellant Nelson D. Wenrick.

GRADY, Judge

{¶ 1} This is an appeal from a final order of the court of common pleas enforcing a settlement agreement.

{¶ 2} In 2003, Union Savings Bank ("Union") commenced an action against White Family Companies ("WFC") and Nelson D. Wenrick on claims for relief for conversion, unjust enrichment, constructive trust, and preferential transfer. The essential facts of that matter are set out in our opinion in a prior appeal in which we reversed a summary judgment for WFC and an order dismissing the claims against Wenrick and remanded the case to the trial court for further proceedings on Union's claims for relief. *Union Sav. Bank v. White Family Cos., Inc.*, 167 Ohio App.3d 51, 2006-Ohio-2629, 853 N.E.2d 1182.

{¶ 3} Following negotiations, on August 27, 2007, counsel for Union sent the following e-mail message to counsel for WFC and Wenrick:

{¶ 4} "This will confirm our clients have reached a settlement *in principle, subject to final documentation,* at $20,000 and that the depositions previously scheduled for this week have been canceled. I called Judge Kessler's chambers and left a voice-mail message for Sasha Vandegrift, his staff attorney, saying we's reached a *tentative* settlement. I understand (that counsel for WFC) will prepare a first draft of the settlement papers." (Emphasis added.)

{¶ 5} It is undisputed that the parties orally agreed that WFC and Wenrick would each pay $10,000 to Union, that upon receipt of that payment Union would dismiss its action against WFC and Wenrick, and that a draft agreement that counsel for WFC subsequently prepared and submitted to other counsel on September 18, 2007, contained those terms. However, after reviewing the draft, on September 24, 2007, Union requested two additional provisions: that "tax advisors" be excepted from the coverage of a confidentiality provision and that the plaintiff and defendants execute mutual releases.

{¶ 6} WFC sent a response to Union on September 25, 2007, agreeing to the exception to the confidentiality provision, but further stated:

{¶ 7} "With respect to the proposed mutual release, WFC is not willing to enter into a mutual release. WFC has not asserted any claims against Union in the pending case. More important, a mutual release of claims was never discussed during the settlement negotiations."

{¶ 8} Counsel for Union and WFC continued to negotiate concerning the matter of mutual releases over the following month, but no agreement was reached. On October 26, 2007, WFC advised Union that WFC's offer of settlement would be withdrawn if Union did not agree to waive a requirement of mutual releases by the close of business on October 29, 2007. Union did not

respond. Two days later, on November 1, 2007, counsel for WFC advised counsel for Union by e-mail that WFC's offer was withdrawn for that reason.

{¶ 9} Conversations between counsel continued after that. A form of "limited release" was discussed, but no agreement concerning limited releases was reached. On December 31, 2007, counsel for Union sent counsel for WFC the following e-mail message:

{¶ 10} "Union is willing to sign the last version of the settlement agreement you circulated, accept the $20,000 from White and Wenrick, and be done with the case in accordance with the settlement the parties reached. Otherwise, we'll file a motion to enforce the settlement, which should get us to the same place. Let me know which way the defendants would rather go."

{¶ 11} WFC declined Union's offer. Union filed a motion on February 4, 2008, asking the court to enforce the parties' settlement agreement. Following submission of memoranda by the parties, the trial court on March 25, 2008, granted Union's motion and ordered enforcement of the parties' oral settlement agreement. WFC and Wenrick filed notices of appeal.

{¶ 12} WFC and Wenrick each assign the same error for review: that the trial court erred when it granted Union's motion to enforce the settlement agreement. Both appellants advance the same arguments in support of the error they assign. Therefore, their assignments of error will be considered together.

{¶ 13} In *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 15–17, the Supreme Court held:

{¶ 14} "It is preferable that a settlement be memorialized in writing. *Pawlowski v. Pawlowski* (1992), 83 Ohio App.3d 794, 798–799, 615 N.E.2d 1071. However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 39, 60 O.O.2d 20, 285 N.E.2d 324. Terms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.' *Rutledge v. Hoffman* (1947), 81 Ohio App. 85, 36 O.O. 405, 75 N.E.2d 608, paragraph one of the syllabus; see, also, *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 380, 620 N.E.2d 996.

{¶ 15} " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Episcopal Retirement*

*Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

{¶ 16} " 'To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear,' and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists. *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 376, 377, 683 N.E.2d 337. However, '[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. In spite of its defects, language renders a practical service. In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make.' 1 Corbin on Contracts (Perillo Rev. Ed.1993) 530, Section 4.1."

{¶ 17} The trial court found that the oral agreement that the parties made and that was memorialized in the e-mail message Union's counsel sent on August 27, 2007, contains all the elements essential to a contract. We agree.

{¶ 18} It is unclear which side offered to settle the litigation, but it is undisputed that the essential terms of the oral settlement agreement were that Union would dismiss its action against WFC and Wenrick upon their payment of $20,000 to Union, and that the adverse party or parties accepted those terms.

{¶ 19} The capacity of the parties to enter into a contract is undisputed. The consideration each provided was its promise to perform given in exchange for the promise of the other to perform.

{¶ 20} There was a manifestation of mutual assent by the parties of their rights and duties imposed by the settlement, first in the August 27, 2007 e-mail message of Union's counsel containing the terms of settlement, followed by the September 18, 2007 draft of a written agreement prepared by counsel for WFC and containing those terms.

{¶ 21} WFC and Wenrick argue that Union's rejection of the draft that counsel for WFC had prepared because it did not contain a provision for mutual releases, followed by WFC's and Wenrick's rejection of Union's request, demonstrates that there never was a meeting of the minds on the matter of mutual releases. It is clear that there was not a meeting of the minds on that matter until Union finally agreed to withdraw its request for releases on December 31, 2007, but a promise to give mutual releases was not part of the consideration each party provided when their oral contract was formed. Because that contract was complete in its terms, Union's request for mutual releases was merely a newly proposed condition precedent to their promised performance that WFC and Wenrick had a right to reject, and did. Neither that rejection nor Union's request for mutual releases as an additional term of their prior agreement could vary or disturb the essential terms of the oral contract of settlement to which they had orally agreed.

{¶ 22} WFC and Wenrick further argue that recitations in counsel for Union's August 27, 2007 e-mail concerning their agreement demonstrate that there was not a meeting of the minds necessary to form a contract. They point out that the message stated that the parties had reached an agreement "in principle, subject to final documentation" and that counsel had reported to the court that they had "reached a tentative settlement."

{¶ 23} The trial court found that the word "tentative" as it appears in the August 27, 2007 e-mail from Union's counsel did not render the terms of the oral contract uncertain. The court stated: "Taken in the extreme, any party could hedge their bets simply by saying that the settlement was tentative, even when all the contractual elements were satisfied. Certain words or phrases cannot be used like magic talisman to avoid contractual obligations otherwise clearly expressed." The court did not address the further statement that the parties had reached a "settlement in principle, subject to final documentation."

{¶ 24} In *Woodward v. Glaser* (1950), 57 Ohio Law Abs. 180, 93 N.E.2d 785, we approved the use of parol evidence to determine the intentions of the parties concerning their use of the word "tentative" in a written contract. We held that use of the word created an ambiguity that permitted the court to admit parol evidence "as to circumstances attending and contemporaneous with the signing of the agreement to enable the jury to determine its true interpretation. In other words, in what particular or particulars is the contract tentative?" Id. at 787.

{¶ 25} The August 27, 2007 e-mail message is not a written contract but is merely a recitation prepared by counsel for one of the parties concerning his understanding of the terms of the oral agreement the parties had reached. Because it is not a written agreement, the parol evidence rule does not come into play relative to the trial court's determination of the meaning of the terms used in the e-mail message. More important, the message is but a form of evidence, and the message not being conclusive of the issues presented, the court could not rely on that message alone to determine the intentions of the parties, particularly when it is but a unilateral declaration of counsel for the party moving to enforce an agreement evidenced by the message.

{¶ 26} "An agreement to make a written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory as the written contract itself would be if executed. The mere fact that parties who have reached a verbal agreement also have agreed to reduce their contract to writing does not prevent the agreement from being a contract if the writing is not made. However, no contract exists when the written agreement is neither signed nor approved by one of the parties, where the parties intend that there be no contract until the agreement is reduced to writing and signed, or that the

contract is to be reduced to writing and signed before the agreement is finally consummated." 17 Ohio Jurisprudence 3d, Contracts, Section 68.

{¶ 27} *Kostelnik* holds that if there is uncertainty as to the terms of a settlement agreement, the court should hold a hearing to determine if an enforceable settlement exists. We believe that the trial court erred when it granted Union's motion without conducting an evidentiary hearing in which the parties may offer evidence relevant to show "in what particular way" their oral agreement was "tentative," *Woodward v. Glaser,* and whether the additional reference to a "settlement in principle, subject to final documentation," does or does not demonstrate an intention that there would be no contract until their oral agreement was reduced to writing or that their contract would be reduced to writing and signed before the agreement is finally consummated. Those are questions regarding the intentions of the parties concerning the finality of their oral settlement agreement that must be resolved if the oral agreement is to be enforced, and they cannot reasonably be resolved from the record on which the court relied.

{¶ 28} The assignment of error is sustained. The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and WOLFF, J., concur.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.