[Cite as *Subel v. AMD Plastics, L.L.C.*, 2023-Ohio-1139.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JACK M. SUBEL, ADMINISTRATOR,
ET AL.,                                         :

      Plaintiffs-Appellants,          :

      v.                              :

AMD PLASTICS, LLC, ET AL.,                      :

      Defendants-Appellees.           :

No. 111770

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART;
          AND REMANDED
**RELEASED AND JOURNALIZED:** April 6, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-946764

---

### *Appearances:*

Dubyak Nelson, LLC, Robert J. Dubyak, and Christina C. Spallina, *for appellants.*

Ulmer & Berne, LLP, Jeffrey J. Patter, Sarah M. Benoit, and Mengxue Xie, *for appellees.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Jack M. Subel, as Administrator of the Estate of Jack Louis Subel and Carol E. Subel ("Estate"), appeals the judgment of the Cuyahoga County Court of Common Pleas granting the motion for summary judgment of appellees

AMD Plastics, LLC ("AMD") and Brian Coll ("Coll") (collectively "appellees") on the Estate's claims against them. After a thorough review of the applicable law and facts, we affirm in part, reverse in part, and remand for further proceedings.

## I. Factual and Procedural History

{¶ 2} This appeal arises from a dispute over the existence of a contract for commission fees. AMD is an Ohio LLC that is in the business of manufacturing sheet products for customers in the automotive industry. Coll is the president and majority owner of AMD. AMD employed the decedent, Jack Louis Subel ("Subel" or "decedent"), as a sales agent and later vice president of sales, for several years until his passing in December 2018.

{¶ 3} In 2017 and 2018, Subel pursued Daimler, a large supplier of cars and trucks, for AMD to supply Daimler with tooling and production parts of P4 headliners for use in Daimler's freightliner truck lines.

{¶ 4} The Estate claims that in summer and/or fall 2018, appellees agreed to pay Subel a 2 percent commission on all sales of P4 production parts, along with tooling, for five years ("Purported Agreement"). The Estate further maintains that the commissions were to be paid in monthly installments and that the terms of the Purported Agreement were not to be affected by the financial performance of AMD. Finally, the Estate contends that the parties agreed that if Subel passed away during the five-year period of the Purported Agreement, any commissions owed to him would be paid to his wife, Carol Subel ("Carol").

{¶ 5} The Estate asserts that Coll represented to Subel in September 2018 that he was having his attorney reduce the terms of the Purported Agreement to writing. Subel did not receive a written agreement, but in November 2018, he sent an email to Coll and AMD memorializing the terms of the Purported Agreement. Coll did not respond to this email, and Subel passed away in December 2018.

{¶ 6} In January 2019, Carol sent an email to Coll requesting an opportunity to discuss the terms of the Purported Agreement. Coll did not respond to this email.

{¶ 7} In February 2020, counsel for the estate sent an email to Coll stating as follows:

> My firm has been retained to represent the Estate of Jack Subel (the "Estate") for commissions owed to the Estate by AMD Plastics, LLC ("AMD"). It is my understanding that Mr. Subel procured the P4 headliner business for AMD from Daimler AG ("Daimler") prior to his passing in December of 2018, and that AMD has begun shipping, or is about to begin shipping, products to Daimler. Mr. Subel's commission agreement with AMD entitled him to 2% of the gross sales to Daimler. Please provide me with all documentation between AMD and Daimler, including but not limited to all contracts, purchase orders and invoices, in order to determine the amount of commissions owed, and to be owed, to the Estate. Please do not hesitate to contact me with any questions.

{¶ 8} After a week without any response from Coll, counsel for the Estate again sent an email requesting documents to determine the commissions owed to the Estate.

{¶ 9} In April 2020, Coll forwarded an email to counsel for the Estate from AMD's Chief Financial Officer attaching AMD's invoices reflecting total P4 headliner

sales from July 2019 to March 2020 of $1,566.76.  Coll further stated in the email, "To whom and where would you like me to send the $32.00 commission check[?]"

{¶ 10} The Estate filed a complaint against appellees alleging claims for breach of contract, unjust enrichment, and failure to pay commissions due under R.C. 1335.11.  The complaint further sought a judgment declaring that appellees were required to remit payments under the Purported Agreement within 13 days of the payments becoming due for the next five years.

{¶ 11} Appellees moved to dismiss the Estate's claims, arguing that they failed to state a claim upon which relief can be granted.  The court denied the motion to dismiss, and appellees then filed their answer.  Appellees later amended their answer to add counterclaims for tortious interference with prospective contractual and business relations along with breach of the duties of loyalty and good faith.

{¶ 12} Appellees moved for summary judgment on the Estate's claim as well as their own counterclaim.  Appellees argued that there was no agreement between the parties, and even if the court were to find an agreement existed, the Estate's claims were barred by the statute of frauds.  Appellees further asserted that the estate could not maintain a claim for unjust enrichment.

{¶ 13} In support of their motion, appellees submitted the affidavit of Coll wherein he stated he was generally agreeable to an arrangement with Subel that included a 2 percent commission on revenue received by AMD for the P4 headliner parts for a two-year period.  Coll further stated that in September 2018, he informed Subel via text message that he would have his attorney prepare a written agreement

regarding commissions for the P4 headliner for their review and terminating AMD's relationship with Subel. The text message was attached to Coll's affidavit and stated as follows:

> I have the lawyer drafting the commission agreement for P4 headliners. At this point I see no purpose to pay you a monthly fee for zero services. I also am not willing to pay commission for future products that I am doing all the work on.
>
> Therefore I think it is best for us to honor the P4 headliner commission and move on.
>
> Thanks for everything over the years and best of luck! I will have the commission agreement back to you next week.
>
> Brian

{¶ 14} Coll further acknowledged in his affidavit that he received an email from Subel in November 2018 purporting to memorialize terms that the two had agreed upon. Coll denied in his affidavit that he was agreeable to the terms Subel set forth and stated that he took the email as an ongoing effort to negotiate an agreement.

{¶ 15} The Estate filed a response in opposition, offering the affidavits of Carol and Subel's son, Jack M. Subel, correspondence between counsel for the Estate and Coll (outlined above), along with invoices for AMD. Also attached to the Estate's brief in opposition was the affidavit of Dean A. Sutton, CPA, who is the manager, accounts payable, of Daimler. Sutton stated that he had conducted a search of available records at Daimler evidencing purchases by Daimler of P4 headliners manufactured and sold by AMD to Daimler from 2019 to June 2022.

Sutton attached to his affidavit a spreadsheet summarizing the records and data retrieved.

{¶ 16} The trial court granted appellees' motion for summary judgment as to the Estate's claims, finding that no genuine issues of material fact remained. The court denied appellees' motion for summary judgment on their counterclaim. Appellees then voluntarily dismissed the counterclaim, and the Estate appealed the trial court's granting of summary judgment, raising one assignment of error for our review:

> The trial court erred, as a matter of law, by granting summary judgment
> in favor of defendant-appellees and against plaintiff-appellants.

## II. Law and Analysis

{¶ 17} In its sole assignment of error, the Estate argues that the trial court erred by finding that there were no facts in dispute in this matter, including whether the Purported Agreement was valid.

{¶ 18} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, in viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is averse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 19} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mitseff*

*v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 604 N.E.2d 138 (1992).

{¶ 20} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. *Id*. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. *Id*.

{¶ 21} This court reviews a trial court's granting of summary judgment de novo. *Brown v. Cty. Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C), evaluate the record in a light most favorable to the nonmoving party, and overrule the motion if reasonable minds could find for the party opposing the motion. *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th Dist.1990), citing *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 433, 424 N.E.2d 311 (1981).

## A. Personal Liability of Coll

{¶ 22} Preliminarily, we address whether Coll may be held liable for acts undertaken in his representative capacity as chairman and CEO as well as a member

of AMD. The Estate contends that Coll can be held personally liable as majority owner of AMD who would capitalize on the profits of the company, which would be higher if Subel was not compensated appropriately under the Purported Agreement.

{¶ 23} We find that there has been no evidence presented that Coll made the Purported Agreement in his individual capacity or that Subel conferred any benefits on him personally. There is no evidence in the record demonstrating Coll's interest in AMD or how he is compensated. Accordingly, Coll cannot be held personally liable on the Estate's claims, and summary judgment was properly granted in Coll's favor. We will therefore analyze the Estate's claims solely against AMD.

## B. Breach of Contract

{¶ 24} Contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act. *See, e.g., Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976) ("'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'"); *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997).

{¶ 25} For a contract to be enforceable, there must be a "meeting of the minds" as to the essential terms of the agreement, i.e., the essential terms of the agreement must be "'reasonably certain and clear'" and mutually understood by the

parties. *Kostelnik* at ¶ 16-17, quoting *Rulli* at 376; *see also Episcopal Retirement Homes v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991) (To "declare the existence of a contract," both parties must consent to its terms, there must be a meeting of the minds of both parties and the contract must be "definite and certain.").

{¶ 26} An oral agreement is enforceable when the terms of the agreement are sufficiently particular. The terms of an oral contract may be determined from "'words, deeds, acts, and silence of the parties.'" *Kostelnik* at ¶ 15, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85, 75 N.E.2d 608 (12th Dist.1947).

{¶ 27} "'The burden of proof on one seeking to enforce an oral contract requires that party to prove the existence of the contract by clear and convincing evidence.'" *Widok v. Estate of Wolf*, 8th Dist. Cuyahoga No. 108717, 2020-Ohio-5178, ¶ 50-54, quoting *Bumgarner v. Bumgarner*, 4th Dist. Highland No. 09CA22, 2010-Ohio-1894, ¶ 20, citing *Nofzinger v. Blood*, 6th Dist. Huron No. H-02-014, 2003-Ohio-1406, ¶ 53. "'Clear and convincing evidence' is evidence that will produce in the fact-finder's mind a firm belief or conviction as to the facts sought to be established." *Id.* Ohio applies this heightened burden because oral contracts are disfavored. *Busch Bros. Elevator Co. v. Unit Bldg. Servs.*, 190 Ohio App.3d 413, 2010-Ohio-5320, 942 N.E.2d 404, ¶ 6 (1st Dist.), citing *Kostelnik*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 15.

{¶ 28} AMD argues there was no meeting of the minds as to the Purported Agreement. AMD contends that the text message from Coll to Subel demonstrates

that the parties had not agreed on whether Subel would be compensated for a monthly fee or any future services nor had they agreed on what constituted the commission and whether the Purported Agreement would include P4 production parts, tooling for Freightliner headliner/backwalls, or some combination of the two. Finally, AMD asserts that it had never agreed to compensate Subel on a commission basis for five years or that there was any mutual understanding as to whether Subel's family would receive commission fees after his passing. Consequently, AMD contends that no agreement had ever formed; the parties were simply negotiating the terms of a potential agreement.

{¶ 29} "Meeting of the minds refers to the manifestation of mutual assent by the parties of an agreement to the exchange and consideration, or to the offer and acceptance." *Tiffe v. Groenenstein*, 8th Dist. Cuyahoga No. 80668, 2003-Ohio-1335, ¶ 25, citing 1 Restatement of the Law 2d, Contracts, Section 17, Comment c (1981). To have a meeting of the minds, "'there must be a definite offer on one side and an acceptance on the other.'" *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, 118 N.E.3d 439, ¶ 18 (8th Dist.), quoting *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 325, 663 N.E.2d 1316 (2d Dist.1995). Furthermore, "[t]he relevant inquiry is the manifestation of intent of the parties as seen through the eyes of a reasonable observer, rather than the subjective intention of the parties." *Bennett v. Heidinger*, 30 Ohio App.3d 267, 268, 507 N.E.2d 1162 (8th Dist.1986).

{¶ 30} This court has stated that "whether a meeting of the minds has been obtained is a question of fact to be determined by the trier of fact from all the

relevant facts and circumstances." *Gutbrod v. Schuler*, 8th Dist. Cuyahoga No. 94228, 2010-Ohio-3731, ¶ 17, citing *Garrison* at 325. *See also Oglebay Norton Co. v. Armco, Inc.*, 52 Ohio St.3d 232, 235, 556 N.E.2d 515 (1990) ("[W]hether the parties intended to be bound * * * is a question of fact properly resolved by the trier of fact.").

{¶ 31} In addition to Subel's own account of the Purported Agreement, the Estate has presented outside evidence that corroborates its contention that, although nothing was reduced to writing, Coll had expressed an intention to compensate Subel. Coll's text message to Subel states that he wanted to "honor the P4 headliner commission." Further, Coll's email to counsel for the Estate appears to acknowledge that Subel was owed $32 for total sales of P4 headliners to Daimler. The documentation states that the total sales amounted to $1,566.76, of which 2 percent would equate to $31.34. Presumably, Coll was rounding up to a whole dollar in his email.

{¶ 32} The estate has therefore presented evidence that there was some agreement to pay Subel 2 percent commission on sales of the P4 headliners. Whether that agreement was the Purported Agreement would be a question for the trier of fact to consider.

{¶ 33} However, AMD further contends that even if we were to find that the parties entered into a valid oral agreement, Subel's claims are barred by the statute of frauds because the Purported Agreement could not be performed within one year. We agree.

{¶ 34} "'Agreements that do not comply with the statute of frauds are unenforceable.'" *6610 Cummings Court, L.L.C. v. Scott*, 2018-Ohio-4870, 125 N.E.3d 362, ¶ 38 (8th Dist.), quoting *Qutifan v. Shafiq*, 2016-Ohio-4555, 70 N.E.3d 43 (10th Dist.), ¶ 13, citing *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923 (1938). The statute of frauds constitutes an affirmative defense to a claim for breach of contract. *Id.*, citing *ELM Invests., Inc. v. BP Exploration & Oil, Inc.*, 10th Dist. Franklin No. 11AP-1000, 2012-Ohio-2950, ¶ 11.

{¶ 35} An agreement that is capable of being performed within one year does not violate the provision of the statute of frauds, which states that a contract that is "not to be performed within one year" must be made in writing. As the Supreme Court of Ohio explained in *Sherman v. Haines*, 73 Ohio St.3d 125, 127, 652 N.E.2d 698 (1995):

> For over a century, the "not to be performed within one year" provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year, and not to agreements which may possibly be performed within a year. Thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds.

(Citations omitted.) *See also Shaver v. Priore*, 8th Dist. Cuyahoga No. 71298, 1997 Ohio App. LEXIS 3526, 7 (Aug. 7, 1997), quoting *Bryan v. Looker*, 94 Ohio App.3d 228, 234, 640 N.E.2d 590 (3d Dist.1994) ("'A contract which is not likely to be fully completed within a year, and which in fact is not completed within a year, does not automatically violate the Statute of Frauds if, at the time the contract is made, there

is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year.'").

{¶ 36} The "not to be performed within one year" provision "applies only to agreements that, *by their terms*, cannot be fully performed within a year * * *." (Emphasis added.) *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-5077, 797 N.E.2d 1002, ¶ 21 (8th Dist.), citing *Sherman* at 127.

{¶ 37} The Estate maintains that the Purported Agreement was for 2 percent commission on sales of P4 headliners *for a period of five years*. Consequently, by its own terms, the Purported Agreement could not possibly be completed in one year. The Purported Agreement is therefore barred by the statute of frauds, and AMD was entitled to judgment as a matter of law on the Estate's breach-of-contract claim. Summary judgment was properly granted on this claim.

## C. Failure to Pay Commissions Under R.C. 1335.11

{¶ 38} In its complaint, the Estate alleges that appellees violated R.C. 1335.11(C) by failing to pay all commissions due to Subel within 13 days after the date that the commissions became due.

{¶ 39} R.C. 1335.11(C) provides that

[u]pon the termination of a contract between a principal and a sales representative for the solicitation of orders for a product or orders for services, the principal shall pay the sales representative all commissions due the sales representative at the time of the termination within thirty days of the termination and shall pay the sales representative all commissions that become due after the termination within thirteen days of the date on which the commissions become due.

{¶ 40} The statute clearly requires the existence of a contract between the parties but does not require that the contract be written. *See* R.C. 1335.11(B)(2). We determined above that the statute of frauds barred recovery on the Estate's breach-of-contract claim and rendered the Purported Agreement unenforceable. Without an enforceable contract, the statute does not apply to the instant matter, and AMD was entitled to judgment as a matter of law on this claim. The trial court properly granted summary judgment.

### D. Unjust-Enrichment Claim

{¶ 41} A claim for unjust enrichment arises out of a contract in law, or a quasi-contract. *CCI Props. v. McQueen*, 8th Dist. Cuyahoga No. 82044, 2003-Ohio-3674, ¶ 13, citing *Hummel*, 133 Ohio St. at 525, 14 N.E.2d 923. This type of contract is not a true contract; rather, it is an "'obligation that is created by the law without regard to expressions of assent by either words or acts,' * * * and is imposed to prevent a party from retaining money or benefits which in justice and equity belong to another." *Legros v. Tarr*, 44 Ohio St.3d 1, 7-8, 540 N.E.2d 257 (1989), quoting 1 Corbin on Contracts 44, Section 19 (1963).

{¶ 42} Unjust enrichment occurs where "''a person has and retains money or benefits which in justice and in equity belong to another.'''" *Smith v. Vaughn*, 174 Ohio App.3d 473, 2007-Ohio-7061, 882 N.E.2d 941, ¶ 10 (1st Dist.), quoting *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, quoting *Hummel* at 528. The purpose of an unjust-enrichment claim is to enable the plaintiff to recover the benefit he has conferred on the defendant under

circumstances in which it would be unjust to allow the defendant to retain it. *Johnson* at ¶ 21, citing *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954).

{¶ 43} In order to prevail on a claim for unjust enrichment, a plaintiff must demonstrate by a preponderance of the evidence that: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances in which it would be unjust for him or her to retain that benefit. *PNC Bank, N.A. v. Bulldog Asset Recovery*, 8th Dist. Cuyahoga No. 100692, 2014-Ohio-4802, ¶ 15, citing *Johnson* at ¶ 20.

{¶ 44} In its motion for summary judgment, AMD contends that it was entitled to judgment as a matter of law because the Estate cannot pursue a claim of unjust enrichment when it also seeks to recover the commission pursuant to a contract covering the payment of such commissions.

{¶ 45} AMD is mistaken, however, in its interpretation of Ohio law. "Unjust enrichment is an alternative theory of recovery, which 'operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another.'" *Cantlin v. Smythe Cramer Co.*, 2018-Ohio-4607, 114 N.E.3d 1260, ¶ 41 (8th Dist.), citing *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, ¶ 19.

{¶ 46} Pertinent to the case at hand,

> [a]n oral contract incapable of being performed within a year is unenforceable under the Statute of Frauds; nonetheless, where one party fully performed and the other defaulted under the agreement a

quasi-contract may arise upon which the performing party may maintain an action against the defaulting party under a theory of unjust enrichment or quantum meruit.

*Kopsky v. MURrubber Technologies, Inc.*, 9th Dist. Summit Nos. 29867 and 29984, 2022-Ohio-511, ¶ 21, citing *Hummel*, 133 Ohio St. 520, 14 N.E.2d 923, at paragraph one of the syllabus.

{¶ 47} We have determined that the Purported Agreement was barred by the statute of frauds and therefore must analyze whether the Estate could proceed on its unjust-enrichment claim.

{¶ 48} As discussed above, unjust enrichment occurs where "'a person has and retains money or benefits which in justice and in equity belong to another.'" *Smith*, 174 Ohio App.3d 473, 2007-Ohio-7061, 882 N.E.2d 941, at ¶ 10, quoting *Johnson*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, at ¶ 20. The purpose of an unjust-enrichment claim is not to compensate the plaintiff for loss or damages suffered by the plaintiff, but to enable the plaintiff to recover the benefit he has conferred on the defendant under circumstances in which it would be unjust to allow the defendant to retain it. *Johnson* at ¶ 21, citing *Hughes*, 162 Ohio St. at 335, 123 N.E.2d 393. Restitution is the remedy provided upon proof of unjust enrichment "to prevent one from retaining property to which he is not justly entitled." *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254, 256, 141 N.E.2d 465 (1957); *see also Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, ¶ 11 (restitution is available as

the remedy for an unjust enrichment of one party at the expense of another), citing Restatement of the Law, Restitution, Section 9 (1937).

{¶ 49} In its complaint, the Estate alleged that Subel conferred a benefit on AMD by performing services in accordance with the terms and conditions of the Purported Agreement and that AMD had knowledge that Subel was entitled to be paid. The email from Coll to counsel for the Estate seems to suggest that Coll (and by extension, AMD) agreed that Subel was entitled to 2 percent on the P4 headliner sales.

{¶ 50} We therefore find that the Estate has demonstrated the existence of a genuine issue of material fact as to whether AMD was unjustly enriched by Subel's performance. Accordingly, AMD was not entitled to judgment as a matter of law on this claim, and the trial court improperly granted summary judgment.

### E. Declaratory-Judgment Claim

{¶ 51} Finally, the Estate sought a judgment declaring that appellees were "required to remit payments under the [Purported] Agreement within 13 days of the payments coming due for the next 5 years." This cause of action was based upon the Estate's claim for failure to pay commissions under R.C. 1335.11. Because we have determined that AMD was entitled to judgment as a matter of law on the Estate's R.C. 1335.11 claim, the Estate was not entitled to a declaratory judgment relating to

payment under the statute. The trial court properly granted summary judgment on this claim.

### III. Conclusion

{¶ 52} The trial court erred in granting appellees' motion for summary judgment with regard to AMD on the Estate's claims for unjust enrichment. The trial court correctly granted summary judgment in favor of AMD on the Estate's claims for breach of contract, declaratory judgment, and failure to pay commissions under R.C. 1335.11, and did not err in granting summary judgment in favor of Coll.

{¶ 53} The estate's sole assignment of error is sustained only as to its unjust-enrichment claim against AMD and overruled as to its remaining claims against AMD and all of its claims against Coll.

{¶ 54} The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR