[Cite as *Matlock v. Reck*, 2018-Ohio-1650.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

ROBYN N. MATLOCK                             :

    Plaintiff-Appellee                          :    C.A. CASE NO.: 27692

                                       :

v.                                           :    T.C. NO. 2015-CVF-214

                                       :

ROBERT J. RECK                               :    (Civil Appeal from
    (R & S MOBILE HOME PARK)                    :    Municipal Court)

                                       :

    Defendant-Appellant                         :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 27th day of April, 2018.

. . . . . . . . . . .

MARIA RABOLD, Atty. Reg. No. 89080, 443 E. Central Avenue, Miamisburg, Ohio 45342
    Attorney for Plaintiff-Appellee


JOSE LOPEZ, Atty. Reg. No. 19580, 18 East Water Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the August 11, 2017 Notice of Appeal of Robert J. Reck. Robert appeals from the March 23, 2017 decision of the trial court overruling his objections to the Magistrate's decision which granted judgment in favor of

Robyn N. Matlock in the amount of $3,000.00, as a result of Robert's breach of the parties' oral agreement regarding Robyn's purchase of a habitable mobile home from Robert. The judgment of the trial court will be affirmed.

{¶ 2} Robyn Matlock filed a pro se "Small Claims Complaint" in Miamisburg Municipal Court against "Robert J. Reck (R & S Mobile Home Park)" on February 3, 2015. The complaint provides as follows: "I purchased a mobile home from Mr. Reck on 10-15-14. No disclosures were given about condition of home and was told that no repair[s] were needed. He did not deliver what was promised. Unsafe conditions are evident." The complaint sought judgment in the amount of $3,000.00.

{¶ 3} Robert filed a motion to dismiss on March 27, 2015, asserting that Robyn lacked standing to bring her claim against him. According to Robert, Robyn "was not a party to the contract for the sale of the mobile home. * * * Shawn Matlock is the sole purchaser listed on the contract." Robert further asserted that Robyn's complaint "should be dismissed as it fails to provide a copy of the purchase agreement at issue in the Complaint and which is required pursuant to Rule 10(D) of the Ohio Rules of Civil Procedure." Attached to the motion to dismiss is a document dated October 15, 2014, with a heading as follows: "R & S Reck Mobile Home Park, 8559 Dayton Cincinnati Pike, Miamisburg, Ohio 45342." The top portion of the document reflects Shawn Matlock's printed name, signature, social security number, date of birth, phone number, and employer, all separated by a dotted line from the lower portion of the document that provides as follows:

* * *RENT* * *

RENT FOR THE HOME IS $275.00 PER MONTH

THE RENT MUST BE PAID BY THE FIRST DAY OF THE MONTH OR YOU

WILL RECEIVE A THREE DAY NOTICE TO VACATE THE MOBILE HOME

THERE IS A $40.00 LATE FEE AND A $10.00 DELIVERY FEE FOR THE

THREE DAY NOTICE

* * *

DO YOU HAVE A COPY OF THE RULES?   YES_____ NO_____

WOULD YOU LIKE A YEAR LEASE? YES_____ NO_____

OR A MONTH TO MONTH LEASE?   YES_____ NO_____

**{¶ 4}** There is a check mark on the first and third "YES" lines.   At the top of the document, above the heading, "35 North" is handwritten, and "Sold As is" is handwritten and underlined.   At the bottom of the document, the following is handwritten:   "Dec 1-2015 Balance on trailer $800.00 Rent for March $775.83."   Also attached to the motion to dismiss is the affidavit of Jose Lopez, counsel for Robert, which provides that "good defenses exist to Plaintiff's claims," including "Plaintiff's failure to state a claim upon which relief can be granted, Plaintiff's lack of standing, and Plaintiff's failure to add a necessary party."

**{¶ 5}** On April 6, 2015, Robert filed a "Motion and Entry to Transfer to Regular Docket," which was granted.   On July 15, 2015 Robert filed an "Answer and Third-Party Complaint of Defendant/Third Party Plaintiff, Robert Reck, for Unpaid Rent and Money Damages (Notice under the Fair Debt Collection Practices Act)."   Robert asserted that he and Shawn Matlock "entered into a written agreement whereby Third-party Plaintiff agreed to sell to Third-party Defendant a mobile home and to lease Third-party Defendant a lot upon which the mobile home sat."   Robert alleged that Shawn breached the written

agreement "in that he failed to pay the rent and the purchase price of the mobile home." According to Robert, Shawn owed him $775.83 in rent as well as $800.00 for the remainder of the purchase price of the mobile home, and $1,220.87 for "unpaid damages and/or necessary repairs to the premises." Attached is the October 15, 2014 document, as set forth above, and an invoice from R&J Handy Man Services addressed to R&S RECK MHP in the amount of $1,220.87.

{¶ 6} On August 31, 2015 Robert filed a motion for summary judgment. Robert argued that the "terms of the contract indicated that the mobile home was being sold in an 'as is' condition," and that at "no time did Defendant contract either orally or in writing with the Plaintiff, Robyn N. Matlock, for the purposes of the sale of the mobile home as she alleges in her Complaint. * * * As such, Plaintiff has no standing to bring the instant action for alleged damages to the mobile home." Attached to the motion is Robert's affidavit, and the October 15, 2014 document. Robert's affidavit provides in part as follows:

* * *

3. That Affiant is the legal owner of R & S Reck Mobile Home Park, LLC, a corporation organized and existing under the laws of the State of Ohio.

4. That on or about, October 15, 2014, I entered into a written agreement with Shawn Matlock to sell him a 1962 Travelo mobile home, VIN # OH703233549, (a copy of said aforementioned contract is attached hereto as Exhibit "B").

5. The contract for sale included a condition that the mobile home

was being sold in an "as is" condition.

6. At no time did I contract either orally or in writing with the Plaintiff, Robyn N. Matlock, for the purposes of the sale of the mobile home identified in Paragraph 3 of this Affidavit.

7. No Express warranties were made regarding the condition of the mobile home.

{¶ 7} On October 1, 2015 correspondence from Robyn to the clerk of court was filed requesting a continuance of the scheduled October 20, 2015 trial date due to her "high risk pregnancy," and the request was granted.

{¶ 8} On March 15, 2016, Robyn filed a pro se response to Robert's motion for summary judgment. On March 29, 2016, Robert filed a reply, noting that Robyn's response does not "contain an affidavit in accordance with Civ.R. 56(E)," and concluding that without "an affidavit, this Court may not consider any of the factual allegations or statements of personal knowledge which comprise the entirety of Plaintiff's response."

{¶ 9} On May 3, 2016, Robyn, represented by counsel, filed an amended response to the motion for summary judgment. The amended response sets forth the following facts:

Defendant agreed to sell Plaintiff a mobile home for $4,000.00. The agreement was that Plaintiff was to pay $3,100.00 as a down payment and $900.00 to be paid in monthly installments of $100.00 for 9 months and as a result Plaintiff would receive a mobile home. This was an oral agreement and the transactions were cash transactions. Plaintiff paid Defendant $3,100 on October 15, 2014 and moved into the property.

Simultaneously, Plaintiff's husband, Shawn Matlock, signed an application to rent the lot on which the mobile home was situated. This was attached to Defendant's Motion for Summary Judgment and marked Exhibit B. It is apparent that this contract was for the lot rent, not for the sale of the mobile home. These two transactions were separate.

Plaintiff continued to pay the $100.00 installment for purchase of the mobile home and $275.00 lot rent, each month. In December 2014, Plaintiff's Husband Shawn Matlock, moved out of the home and Defendant continued to handle rent and purchase transactions with Robyn Matlock.

{¶ 10} According to Robyn, Robert's "acts were unconscionable under Ohio Revised Code § 1345.03. Defendant made a statement to Plaintiff regarding the condition of the home and she relied on it to her detriment. Defendant has gained $3,500.00 and Plaintiff did not receive a suitable and fit mobile home. A genuine issue of material fact exists regarding Defendant's statements made to Plaintiff and the details of the transaction."

{¶ 11} On May 20, 2016, Robert filed a "Motion to Strike Plaintiff's Amended Response to Defendant's Motion for Summary Judgment," asserting that it "was filed out of time and lacks a supporting affidavit."

{¶ 12} On June 21, 2016, the Magistrate issued an "Entry & Decision on Motion for Summary Judgment." The Magistrate determined as follows:

It may be that Plaintiff's ultimate chance at success is nil. We are not yet at the final stage, since factual issues still remain. The court is not convinced by the requisite standard of proof that Defendant is entitled to

prevail on summary judgment.   Accordingly this matter is set for trial before Magistrate Jeffrey Slyman on **August 30, 2016 at 1:00 pm.** * * *

**{¶ 13}** On July 5, 2016, Robert filed objections to the Magistrate's decision. Robert asserted that Robyn untimely responded to his motion for summary judgment seven months after it was filed. Robert argued that "despite the utter lack of **any permissible** evidence or averments, the Magistrate permitted and considered the filing." Robert noted that Robyn's subsequent amended response contained averments, none of which "were in any way supported by testimony or evidence deemed admissible for summary judgment purposes pursuant to Civil Rule 56."   Robert asserted that Robyn "has failed to **ever** present any evidence or testimony contrary to the affidavit of Robert J. Reck that is admissible pursuant to Civil Rule 56."   Robert argued that "the unchallenged averments set forth in Robert J. Reck's Affidavit stand unchallenged and establish that said Defendant is entitled to summary judgment as a matter of law."   He asserted that "the Affidavit establishes that (1) the Defendant entered into a written agreement to sell Shawn Matlock a mobile home; (2) that the contract included a provision that the home was being sold 'as is'; and (3) that Plaintiff, Robyn N. Matlock, was not a party to the sale of the mobile home."

**{¶ 14}** On July 20, 2016, "Plaintiff's Memorandum in Opposition to Defendant's Objections to Magistrate's Decision was filed."   Therein Robyn asserted that she "was served with her trial date at the prior hearing on June 23, 2015," and that Robert failed to request leave of court to file his motion for summary judgment, as required by Civ.R. 56(A).   Robyn asserted that it "is not a requirement that the response to summary judgment be presented to the Court with an affidavit. Given the extensions granted to

Mrs. Matlock, her Amended Response to Defendant's Motion for Summary Judgment should be considered." Robyn asserted as follows:

* * *

Lastly, even if this Court finds Ms. Matlock's responses were untimely and must consider only Mr. Robert Reck's Motion for Summary Judgment and Affidavit, the summary judgment cannot prevail. Defendant has not proven that reasonable minds can come to only one conclusion and that conclusion is against Mrs. Matlock. In Defendant's Motion for Summary Judgment and Affidavit, he states "Exhibit B" is a "contract for sale" of the mobile home. However, there is no mention of a sales price or other conditions of a sale. "Exhibit B" appears to be an application to rent the lot space and has no bearing on the actual sale of the mobile home. At the very most, "Exhibit B" is a lease agreement which is not at issue in this matter. Therefore, the Plaintiff must be given the opportunity to cross-examine the Defendant regarding this "contract" because the contract is ambiguous. There are issues of material fact still to be determine[d] in this matter.

{¶ 15} On August 25, 2016, the court overruled Robert's objections. The court concluded that the October 15, 2014 document "is not on its face a clear contract as to the purchase of a mobile home. It reflects a 'balance on trailer' of $800.00 yet also sets forth a 'rent for the home' of $275.00 per month. Although stating 'sold as is' there is no purchase price reflected on the Exhibit."

{¶ 16} Trial of this matter occurred on August 30, 2016, and December 13, 2016.

On the first day, Robyn testified that she moved into the mobile home on October 15, 2014, and moved out on March 31, 2015. She stated that Robert represented to her that "everything [in the mobile home] was in good working order, no work needed to be done." According to Robyn, Robert "showed my husband around first, my husband had me come and look at it and we both agreed together that we would purchase it * * *." She stated that after she moved in, "the roof or the ceiling started to dip all the way through, we noticed mold, water damage, * * * termite damage." Robin stated that the purchase price of the mobile home was $3,800.00, that she made a down payment of $3,100.00 and paid Robert $100.00 a month for the following November, December, January, and February. Robyn testified that she received an inheritance of $4,000.00 from the sale of her grandparents' home, and that she used that money for the down payment.

{¶ 17} Robyn stated that the water was turned off in the home in February 2015. She testified, "I had paid my rent for that month, I put it in the drop box, * * * Mr. Reck, claimed that I did not pay my rent and he didn't get it. So I called and made a police report about my rent money being stolen and it was after that he did the three day notice and I notified him I was going to take him to small claims court and then the eviction."

{¶ 18} Robin testified that a company called The Water Works inspected the home at her request. The following exchange occurred:

BY PLAINTIFF'S ATTORNEY:

Q. I'm handing the witness a copy of plaintiff's exhibit 1, can you please describe what this document is?

DEFENSE ATTORNEY: Objection Your Honor. The document itself is here say [sic] unless there is going to be somebody from the

company here to testify as to the authenticity of it and the fact that it is a business record.

THE COURT: The document may not be here say [sic], the conclusions and things contained therein maybe. I think the question was can she identify it, so let's just stick with that. Overruled.

* * *

A. Um, it's an estimate of repairs that needed to be done and the value of the repairs.

Q. Okay and speaking only to um, the price, as far as the, um, do they give you a price of how much it would cost to restore the mobile home?

DEFENSE ATTORNEY: Objection your Honor, it's hearsay.

THE COURT: Um, they haven't got there yet, we are getting very close, all right, so in answer to the question, where [sic] you given a price guide?

THE WITNESS: Yes.

THE COURT: All right.

BY PLAINTIFF'S ATTORNEY:

Q. How much was their estimate?

DEFENSE ATTORNEY: Now objections.

THE COURT: Now I'll sustain it.

BY PLAINTIFF'S ATTORNEY: Okay, going through this estimate, the damages that were reflected in this document, did you * * * view those damages in the mobile home that you owned?

A.  Yes.

DEFENSE ATTORNEY:  You Honor, could I have a continuing objection to the exhibit again.  I think without some proper foundation the exhibit itself. . .

THE COURT:  But I haven't admitted it into evidence yet and some of the questions I think are * * * not hearsay, so, but you can have a continuing line of objection, that is granted, but at least as far as the question just asked, it's overruled.

BY PLAINTIFF'S ATTORNEY:  The damages that are outlined by this estimate, did you view these in your home?

A.  Yes.

Q.  Can you walk us through specifically what the damages that you saw [sic]?

A.  Yes, starting in the back bedroom, in the closet, whatever material was put up peeled back, water damage, mold behind it, the ceiling was dipping and you could see where he had tried to patch it but it . . . inaudible . . . and messy, um, the walls, were soft walls, you could press on them and they were, like there was water behind them.  In the bathroom there was quite a bit of water damage and the whole bathroom needed to be gutted and redone and the second bedroom, the ceilings were also dipping and there was like plywood, the ceiling was made of plywood and that was also dipping.  In the living room, the ceiling, all through the middle was bowed and dipping, soft spots behind the walls and the same with the

ceiling in the kitchen.

\* \* \*

BY PLAINTIFF'S ATTORNEY:

Q. \* \* \* Given the damages that you just described were you able to continue to reside there?

A. We were until February until he had shut off the water, this was after he had claimed that he didn't receive my rent and my payment for that month and then I filed a small claims, he had filed for the eviction.

Q. Do you remember when the water was shut off?

A. \* \* \* I want to say around February 12th.

{¶ 19} Robyn identified Exhibit 2 over objection as a bill from the Studio 6 Motel in her name from February 28, 2015 until April 24, 2015. She stated that she moved there because "I had a one year old son at the time that had to be bathed, prepare bottles and meals and with no water it was impossible, so we had no choice but to go get a motel room to take care of him." She stated that she began staying at the Studio 6 Motel on February 12, 2015, and that the initial bill was in her husband's name. Robyn testified over objection that she spent over $875.00 to stay there.

{¶ 20} On cross-examination, Robyn acknowledged that her March 15, 2016 pro se handwritten response to the motion for summary judgment provides that the "agreement was between the three of us, myself, my husband, and Mr. Reck," and that she further indicated, "this was a joint purchase." When asked why she filed suit only in her name, Robyn responded, "because I had the money," and "because he was no longer in the home." According to Robyn, "we had a protection order and he was not allowed

to be in the home."  Robyn stated that she filed the small claims complaint the day after she was served with the three day eviction notice.

**{¶ 21}** The following exchange occurred:

Q.  Ma'am, you have no documentation whatsoever that you ever signed, entering into an agreement with the defendant in this case, correct?

A.  Yes, this is the only paper that we were given and it was basically an application to move in.

Q.  My question is you don't have anything signed with your name on it correct?

A.  No.

Q.  This is the only piece of paper that you signed with Mr. Reck with respect to your purchase of the trailer, correct?

A.  This was the only paperwork involved.

Q.  And under your testimony you and your husband were attempting to purchase this trailer and this is the only document that you received in response to that purchase, correct?

A.  Yes.

Q.  And this document at the top says sold as is, correct?

A.  Yes.

Q.  And in fact you don't have a copy of what's been marked as defense exhibit * * * C, that doesn't have the language sold as is at the top of it, do you?

A.  No, this is the only paper that was given and this was added after

the fact.

Q. * * * do you have a copy of defense exhibit C that doesn't have the words sold as is at the top?

A.  No.

Q.  Well you just testified that this sold as is was added after the fact, you should have a copy of defense exhibit C then that doesn't have sold as is, correct?

A.  No, he never gave us a copy.

{¶ 22} When asked on redirect to identify the October 15, 2014 document, Robyn responded, "This is what my husband had to fill out when we were looking at mobile homes, like an application, like when you go to apply for an apartment, you have to fill out an application with your name, social, your employer, how many people and that was what this was."  Robyn stated that she would not have purchased the mobile home if Robert did not state that it was "move in ready."  Robyn testified that Robert controlled the utilities, and "everything was regulated by Mr. Reck."  On recross-examination, Robyn stated that she had received a receipt from Robert for her down payment on the mobile home, and that she did not have a copy thereof because "it got damaged."

{¶ 23} When trial resumed on December 13, 2016, Robyn rested subject to the admission of Exhibit 2, the Studio Six Motel receipt, and Exhibit 4, a transcript of proceedings before the municipal court on a forcible entry and detainer action initiated by Robert against Robyn and Shawn, at the conclusion of which Robyn agreed to vacate the premises.  Exhibit 2 was admitted over objection, and Exhibit 4 was admitted without objection.  The Magistrate indicated, "for clarification, I am not admitting 2 for an actual

proof of the damages that are allegedly represented therein, but there was some testimony concerning it, so I am going to give it the weight that it is appropriately due, so that being said, plaintiff rests."

**{¶ 24}** Robert testified that he did not turn off the water at the mobile home, and that Robyn "threw a piece of paper in the office that said her water was froze up." He identified Exhibit F as a copy of the note from Robyn. Robert identified photographs taken by him of the condition of the mobile home after Robyn moved out. He stated that she left behind dishes in the sink, trash on the floor and a mattress. He stated that he sells "all trailers as is," and that he did not make any representations regarding the home's condition. Robert stated that he has sold approximately 30 trailers.

**{¶ 25}** On cross examination, Robert testified that when he sells a mobile home, he also rents the lot where the home is located. The following exchange occurred:

Q. When you have a mobile home, you hold title to that, correct?

A. Yes.

Q. And do you transfer that title to the person who is purchasing the mobile home?

A. If they are going to buy it.

Q. Okay, so in this case, it was your intention to transfer that title to Robyn Matlock?

A. Yeah, but she wasn't around, so I couldn't anyway. She was never there.

Q. Okay and she actually gave you $3,100.00 cash for this mobile home, correct?

A.   No, I can't remember, but I know she didn't give me that much money.

* * *

A.   Something like two thousand something.

Q.   She paid you cash, her statement is that she paid you $3,100.00 cash, she paid you some cash, correct?

A.   She paid me some cash, but she probably done $4,000.00 worth of damage.

{¶ 26} Robert testified, "I never talked to [Robyn] about purchasing it, it was [Shawn.]"  When asked if "a lot rental is a different transaction than a purchase of a mobile home," Robert responded, "Yes, * * *  if they don't pay their lot rent, even though they own it, I will evict them out."

{¶ 27} On December 15, 2016, the Magistrate issued a decision in favor of Robyn in the amount of $3,000.00.   Robert filed objections on December 28, 2016, as follows:

1.   The Magistrate erred in failing to find that Plaintiff had failed to join all necessary parties or was otherwise the real party in interest;

2.   The Magistrate erred in calculating Plaintiff's alleged damages;

3.   The Magistrate erred in permitting the introduction of inadmissible hearsay;

4.   The Magistrate erred in granting judgment to Plaintiff;

5.   The Magistrate erred in looking beyond the four corners of the Purchase Agreement;

6.   The Magistrate erred in not finding that Plaintiff's breach of

contract barred Plaintiff's recovery; and

7. The Magistrate erred in finding that the property was not purchased "as is".

**{¶ 28}** With leave of court, Robert filed a memorandum in support of his objections on February 13, 2017. On February 27, 2017, Robyn opposed the objections. She asserted that, pursuant to a verbal agreement, she initially paid $3,100.00 from her inheritance for the mobile home, and that her husband did not use any of his own funds for the purchase. She asserted that Shawn entered into a separate transaction for the rental of the lot, and that she was the real party in interest. Robyn argued that she continued to pay monthly installments of $100.00 as verbally agreed until Robert "shut off the water to the property and was later granted restitution of the property." Robyn argued that "Exhibit 1 was not admitted to prove damage to the mobile home" but to corroborate her testimony "that she received an estimate and that the mobile home was not habitable." She argued that Exhibit 2 "was admitted to show that Plaintiff could not reside in the mobile home and was forced to stay at a hotel." Robyn argued that she was entitled to judgment as a matter of law based upon her verbal agreement with Robert, and that she did not enter into a written purchase agreement. She asserted that the October 15, 2014 document is not a purchase agreement. Robyn argued that she did not breach the oral agreement. She argued that in the oral agreement "there was no discussion between the parties regarding an 'as is' purchase." On March 7, 2017, Robert filed a reply.

**{¶ 29}** In overruling Robert's objections, the court noted Robert's assertion that the October 15, 2014 document "is a valid contract for the sale of the mobile home to the Plaintiff and her husband, Shawn Matlock." The court determined as follows regarding

Robert's first objection:

> Here, the Plaintiff's husband has no real interest in this matter. The Plaintiff paid money to the Defendant in exchange for the sale of the mobile home. No evidence of record demonstrates any interest held by the husband to the outcome of this case. The Defendant's purported "contract," marked as Exhibit C, is not on its face a clear contract as to the purchase of the mobile home. It fails to recite any intention to sell the mobile home, and further does not name the Plaintiff anywhere on the form. Although the Defendant wrote "sold as is", by hand, on the top of the document, which is contested by the Plaintiff, there is no purchase price nor any other indication of the sale of the mobile home. This court is not in a position to fill in significant gaps in an alleged contract, submitted by this particular Defendant, that is highly questionable and suggests no intent by either party of the sale in question. Moreover, neither party has contested that the Plaintiff's husband paid no consideration for the mobile home. Therefore, the Plaintiff's husband has no interest in this matter for the return of the Plaintiff's payment. * * *

{¶ 30} In a footnote, the court noted as follows: "The procedure of this case has revealed the Defendant's questionable character, and his uncertain use of this court's resources. The Defendant has a meaningful history of bringing similar suits against tenants with little to no resources, and has taken advantage of their ignorance of the law."

{¶ 31} Regarding Robert's second objection, the court found as follows:

> This objection is without merit, and is tied to the objection that the

Plaintiff is not the real party in interest. Neither party contests that the Plaintiff has paid the Defendant consideration in an amount equal to or greater than $3,000 in exchange for the mobile home. The Defendant's breach of the verbal contract for the sale of the mobile home entitles the Plaintiff to the same amount; Plaintiff is only claiming $3,000, which is in fact less than what she paid the Defendant. However, the Plaintiff's claimed amount is not the issue here. * * *

{¶ 32} Regarding Robert's hearsay arguments addressed to Plaintiff's Exhibits 1 and 2, the court noted that even "without the admission of these two exhibits, the Magistrate's decision is still supported by clear and convincing evidence that the Plaintiff is entitled to her damages against the Defendant." The court found that "[r]egardless of whether the two Exhibits being contested by the defendant are in fact inadmissible hearsay, the admission of these exhibits did not amount to prejudicial error on the Defendant. If the admission of inadmissible hearsay would not change the outcome of a case, such error is harmless." The court further determined as follows:

Other unsurmountable evidence shows the Defendant here breached his promise to sell a livable home to the Plaintiff. The Defendant has received back his mobile home, and accordingly, the Plaintiff is entitled to restitution of money paid to the Defendant. The Defendant's questionable actions and frequent use of the Court's docket has rightfully led the Magistrate to find judgment in the Plaintiff's favor. Other testimony, along with exhibits admitted shows that the representations made verbally to the Plaintiff were quite deceiving, and reasonably caused the Plaintiff to

rely on those representations when purchasing a home from an established place of business. This conclusion is supported, for example, by the Plaintiff's testimony that payment was made and that a police report was filed, even though Defendant denies receiving such payment, along with consideration of the Plaintiff's testimony that the Defendant wrote "sold as is" on the document marked as the Defendant's Exhibit C after the document was taken from the Plaintiff, an act that amounts to fraud and deceit.

**{¶ 33}** Regarding Robert's remaining objections, the court concluded that the Magistrate appropriately weighed the evidence in ruling in favor of Robyn, that the October 15, 2014 document "is not sufficient to be considered an enforceable contract" and that the Magistrate accordingly "was correct in looking to other factors in order to determine the intent of the parties." The court found that the Magistrate "correctly found the Defendant breached the agreement made between him and the Plaintiff, and correctly awarded the Plaintiff's claimed amount of damages."

**{¶ 34}** Robert filed a Notice of Appeal on April 7, 2017. On June 6, 2017, this Court issued a show cause order, noting that Robert's claims against Shawn Matlock had not been resolved. On July 24, 2017, this Court issued a Decision and Entry noting that on August 30, 2016, counsel for Robert advised the Magistrate that service was never perfected on Shawn. This Court determined that "while a trial court may enter judgment on fewer than all the claims, the judgment is not final and appealable unless the court expressly determines there is no just reason for delay." On July 31, 2017, the trial court issued a Dismissal Entry dismissing Robert's claims against Shawn.

{¶ 35} Robert asserts four assignments of error herein. We initially note that the following is well-settled:

In accordance with Civ.R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. *Dayton v. Whiting* (1996), 110 Ohio App.3d 115, 118, 673 N.E.2d 671. Thus, the trial court's standard of review of a magistrate's decision is de novo.

An abuse-of-discretion standard, however, is the appellate standard of review when reviewing a trial court's adoption of a magistrate's decision. Claims of trial court error must be based on the actions taken by the trial court itself, rather than the magistrate's findings or proposed decision. When an appellate court reviews a trial court's adoption of a magistrate's report for an abuse of discretion, such a determination will only be reversed where it appears that the trial court's actions were arbitrary or unreasonable. *Proctor v. Proctor* (1988), 48 Ohio App.3d 55, 60–61, 548 N.E.2d 287. Presumptions of validity and deference to a trial court as an independent fact-finder are embodied in the abuse-of-discretion standard. *Whiting.*

*State Farm Mut. Auto Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339*, ¶* 10-11 (2d Dist.).

{¶ 36} For ease of analysis, we will first consider Robert's fourth assignment of error.   It is as follows:

THE TRIAL COURT ERRED BY PERMITTING PLAINTIFF-

APPELLEE TO ENTER INADMISSIBLE HEARSAY EVIDENCE.

{¶ 37} Robert asserts as follows:

[Robyn's] Exhibit "1" was an estimate of repairs for damages prepared by a third-party company. Every statement made in that estimate was by a third party and was introduced solely as evidence of the existence and value of the repairs, both of which are inadmissible without the in-court statement of the preparer of the documents. Similarly, [Robyn] also offered an exhibit containing motel expenses which [Robyn] claims were necessary and additional because she was unable to reside in the mobile home. * * * [Robyn's] only purpose to admit the exhibit would be to prove the costs of her stay at the motel and to prove the fact that she stayed at the motel. Again, both of these purposes were used to prove the fact of the matter being asserted and, therefore, both are inadmissible hearsay. Despite their inadmissibility, the court overruled [Robert's] objection.

{¶ 38} As this Court has previously noted:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). "To constitute hearsay, two elements are needed. First, there must be an out-of-court statement. Second, the statement must be offered to prove the truth of the matter asserted. If either element is not present, the statement is not 'hearsay.' " (Footnote and citations omitted) *State v. Maurer*, 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984). *Accord State v. Tate*, 2d Dist. Montgomery No.

25386, 2013-Ohio-5167, ¶ 75.

*Abrams v. Abrams,* 2017-Ohio-4319, 92 N.E.3d 368, ¶ 30 (2d Dist.).

**{¶ 39}** The record reflects that at the start of proceedings on December 13, 2016, counsel for Robyn advised the Magistrate that "the plaintiff would rest, pending the admission of plaintiff's exhibit 2, which was offered and also request that the Court take judicial notice that the plaintiff's exhibit 4, which is a copy of transcript, that was ran subsequent to the last hearing that we had on this matter." Exhibit 1 was neither moved into evidence nor admitted sua sponte by the Magistrate. As noted above, the Magistrate admitted Exhibit 2 over objection after noting that the exhibit was not being admitted as proof of damages. The trial court determined that the Magistrate's decision "was still supported by clear and convincing evidence," even in the absence of Exhibits 1 and 2.

**{¶ 40}** Although Robyn testified that she spent over $875.00 to stay at the motel, her motel expenses were not material to her claim for $3,000.00, which was based upon her down payment on the mobile home. In other words, as the trial court noted, any error in the admission of Exhibit 2 is harmless. Furthermore, Robyn did not seek the admission of Exhibit 1, and we accordingly need not address Robert's argument as to that exhibit. Robert's fourth assignment of error is overruled.

**{¶ 41}** We will address Robyn's remaining assignments of error together. They are as follows:

THE TRIAL COURT ERRED IN FAILING TO ENFORCE THE LEASE-PURCHASE AGREEMENT,

And,

THE TRIAL COURT ERRED IN AWARDING JUDGMENT TO PLAINTIFF,

And,

THE TRIAL COURT ERRED IN ITS CALCULATION OF DAMAGES TO PLAINTIFF-APPELLEE.

{¶ 42} Under his first assignment of error, Robert argues that a "valid written contract existed for the lease and purchase of the mobile home," and that the "Lease-Purchase Agreement of the parties meets the elements of a contract and should have been enforced as written." According to Robert, "[w]ithout any ambiguous terms, the Magistrate was required to enforce the terms of the Lease Purchase Agreement contained within its four corners." Robert argues that the "Magistrate is therefore required to enforce the 'as is' clause contained within the Lease-Purchase Agreement which said clause nullifies any potential recovery for the alleged 'unsafe' condition of the mobile home alleged by [Robyn]."

{¶ 43} Robert argues that Robyn "was not a party to the Lease Purchase Agreement and is not entitled to recovery under it." Robert argues that Shawn "is a necessary party pursuant to Ohio Civil Rule 19 without whose joinder would prejudice [Robert] and put [Robert] at risk of potential double recovery." Robert asserts that Shawn "has a strong interest in the subject of the action and, therefore, complete relief cannot be accorded to the parties without his joinder." Robert asserts that Robyn, "as a non-party to the Lease-Purchase Agreement, is not the real party in interest."

{¶ 44} Robert further argues that the " 'as is' clause negates any recovery for the condition of the mobile home." According to Robert, if "a real estate purchase contract

contains an 'as is' clause, the doctrine of caveat emptor applies." Robert argues that he "made no representations to [Robyn] of any conditions of the mobile home and in fact never spoke with her. [Robyn] and her husband had the opportunity to inspect the property and must bear the risk that the property would later deteriorate."

{¶ 45} Finally, Robert asserts that Robyn "breached the Lease-Purchase Agreement by failing to pay the full purchase price of Three Thousand Eight Hundred Dollars ($3,800.00), which was an essential term to the contract." According to Robert, even if Robyn "is a party in interest under the Lease-Purchase Agreement, she is precluded from recovery for [Robert's] alleged breach of the Lease-Purchase Agreement because she simultaneously failed to perform her obligations under the contract." Robert asserts that there "is no dispute that a contract existed between [Robert] and Shawn Matlock for the lease and purchase of the mobile home. * * * [Robyn] admitted that she did not perform her obligation under the Lease-Purchase Agreement to pay the full purchase price of the mobile home." According to Robert, Robyn "does not meet the elements of a claim for a breach of contract and is not entitled to any award under the contract."

{¶ 46} In his second assignment of error, Robert argues that neither "the trial transcript nor the Trial Court's Decision of March 23, 2017 sets forth a cognizable theory of recovery either at law or at equity by which it believed that Plaintiff-Appellee was entitled to judgment." According to Robert, a "fair reading of the Trial Court's Decision suggests the most likely theory of recovery is for breach of an oral contract. However, such a claim should also fail as the evidence is clear that no oral contract existed between the parties." Robert argues that "the parties did not come to a meeting of the minds for

the sale of the mobile home as required for an oral contract to exist." Robert further argues that it "is illogical to suggest that [he] would have entered into a separate oral agreement for the sale of the mobile home to Robyn Matlock when he believed he had a written agreement for its lease and sale with Robyn's husband, Shawn. There could not have been a meeting of the minds to orally lease the mobile home given the existence of the written agreement to lease and sell it." Robert argues that "there could not have been an oral agreement given Reck's testimony that he had no discussions with Matlock prior to the signing of the Lease-Purchase Agreement." Robert argues that Robyn's testimony "revealed that she did not believe she had a contract as she admitted that she brought the lawsuit instead of her husband solely because she was the only one with the financial means to do so."

{¶ 47} Robert asserts that Robyn is not entitled to restitution as a tenant. He argues that the trial court's judgment "ignores the fact that [Robyn] was a tenant and not an owner of the mobile home and that no representations were made as to the condition of the mobile home." Robert argues that there "was never a dispute that [he] held a full and clear title to the mobile home. A fair reading of the testimony, along with the Lease-Purchase Agreement, shows that the parties intended that [Robyn] would only own the mobile home after such time as the full purchase price was paid. The purchase was never discussed with [Robyn]." Robert argues that by "awarding full restitution, the Court has essentially treated [Robyn] as an owner who purchased damaged goods. This is not the case. [Robyn] was a tenant of the mobile home, who was paying to both rent and eventually purchase the mobile home. The evidence is undisputed that she did not finish paying for the mobile home and had no ownership interest in it." Robert argues that the

trial court "ignored the rental portion of the agreement and essentially permits [Robyn] to live rent free during her occupancy." According to Robert, "under a lease, [Robyn] would not be entitled to a return of the money she had paid towards the lease. Furthermore, if the agreement was a lease, [Robyn] would not be entitled to reimbursement simply because she was not satisfied with the condition of the mobile home without any promises as to its condition." Robert notes that Robyn "did not dispute that she could be evicted from the mobile home and in fact willingly agreed to abandon it."

{¶ 48} Finally, Robert argues that the "Magistrate erred in awarding judgment to [Robyn] under the Lease-Purchase Agreement based upon the condition of the mobile home because it was sold 'as is' and no promises were made at the time of the agreement as to its condition." According to Robert, there "is no testimony that [he] made any representations to [Robyn] of the condition of the mobile home besides what was contained in the Lease-Purchase Agreement, nor was there testimony that the Lease-Purchase Agreement was entered into under duress or coercion or that no opportunity was given to inspect the premises." According to Robert, "the Magistrate is required to enforce the Lease-Purchase Agreement and the 'as is' clause contained within."

{¶ 49} In his third assignment of error, Robert argues that the "trial court's award of damages is unreasonable in light of the actual harm suffered by [Robyn]. According to the testimony, [Robyn] and her husband paid rent up and through February but resided in the mobile home until approximately February 12, 2016. * * * That leaves only sixteen (16) days in which [Robyn] paid rent but did not reside in the property." According to Robert, the trial court's judgment in the amount of $3,000.00 "far exceeds the value of the sixteen (16) days of monthly lot rent of Two Hundred Seventy-Five Dollars ($275.00), plus

the monthly fee of Two Hundred Dollars ($200.00) for the purchase of the mobile home." Robert argues that Robyn is "not damaged by the loss of the money paid towards the purchase of the mobile home because she had no expectation of owning said mobile home. The Lease-Purchase Agreement required [Robyn] to pay the full purchase price before she could expect to own the home which she admittedly failed to do." Robert argues that Robyn "was not damaged by the condition of the home after the sale because she was not made any promises to its condition," and that his "testimony that the mobile home was sold 'as is' is the only reliable evidence heard at trial as to the condition of the mobile home." Finally, Robert argues that the trial court's award of $3,000.00 to Robyn is speculative, and that the trial court "offered no factual basis as to how it arrived at the specific Three Thousand Dollar figure."

**{¶ 50}** Robyn responds that "[t]here are no terms or a set of promises established in [the October 15, 2014 document] and it should not be considered a purchase agreement * * *. [Robyn's] signature appears [nowhere] on the document despite her testimony that she negotiated a purchase of the mobile home with [Robert]." Robyn argues that Robert's "testimony was not credible." Robyn asserts that "even if the document was to be considered a 'contract,' it is ambiguous as to the terms of the sale. The document doesn't even state a payment price." Robyn argues that the "true contract which existed between the parties was a verbal agreement made only between" her and Robert. She asserts that the "terms were that [she] was to pay $3,100.00 down for the mobile home and make seven (7) monthly installments of $100.00." Robyn argues that Shawn "was not a party to the verbal agreement for purchase of the mobile home and therefore is not a necessary party." She argues that she "went to her bank, withdrew the

funds of $3,100.000 and paid [Robert], in cash, for the mobile home." She argues that the money came from her inheritance, and that Shawn "did not use any of his funds for this purchase." According to Robyn, the transaction reflected in the October 15, 2014 document "was separate and apart from the purchase of the mobile home."

{¶ 51} Robyn further argues that since the October 15, 2014 document "is not a valid contract, the 'sold as is' written on the top of the lease application is not valid and should not be enforceable." Robyn argues that the "Court gave more deference to [her], thus believing she did not breach her agreement to pay and upheld her part of the verbal contract for purchase." She argues that she "was not permitted to finish her monthly installment payments because [Robert] shut the water off and sued for forcible entry and detainer. * * * [Robyn] agreed to leave the property because [Robert], firstly, breached their verbal agreement by not provid[ing] a habitable mobile home."

{¶ 52} Robyn asserts that she "is not requesting restitution of the 'lot rent' of $275.00/month. The Court did not grant her judgment for the rental amount she paid. The amount she paid for the mobile home purchase was in addition[] to any rental money paid to [Robert]." She asserts that whether "or not she paid the $275.00 lot rent is not at issue in this case. The result of the forcible entry and detainer case is not at issue on this appeal." Robyn argues that the "only issue before the Court today is whether or not [Robyn] and [Robert] had a contract for purchase of the mobile home, terms of that contract, whether or not there was a breach of that contract and what the damages were." She asserts that the verbal contract between her and Robert "was the only contract which is valid." She asserts that the "terms of the verbal contract are clear and [she] had proven that [Robert] made representations to her regarding the condition of the mobile home."

{¶ 53} In reply, Robert responds that the October 15, 2014 document is not ambiguous, and "absent of any ambiguity, the Magistrate was required to enforce the terms of the Lease-Purchase Agreement contained within its four corners including the 'as is' clause contained within the Lease-Purchase Agreement, which said clause nullifies any potential recovery for the alleged 'unsafe' condition of the mobile home alleged by [Robyn]." Robert argues that Shawn "is the only party in interest because he was the only one to sign the Lease-Purchase Agreement with Appellant." Robert asserts that the "source of the payment under the contract is irrelevant." He argues that Robyn is "not a party in interest and not entitled to any recovery from" him. Robert further asserts that "it is undisputable that the written agreement did contain an 'as is' clause and that it should be part of the agreement." He argues that Robyn's "breach of the contract precludes recovery."

{¶ 54} Robert argues that restitution of the mobile home to him "strongly supports [his] position that [Robyn] had no ownership interest in the mobile home. [Robert] could not have had the mobile home restored to him if it belonged to [Robyn]." He argues that the "agreement was a lease, and under a lease, [Robyn] would not be entitled to reimbursement of the full value of the mobile home simply because she was not satisfied with its condition."

{¶ 55} Finally, Robert asserts that the "Lease-Purchase Agreement required [Robyn] to pay the full purchase price before she could expect to own the home which she admittedly failed to do. * * *She was not damaged by the condition of the home after the sale because she was not made any promises [as] to its condition." Robert argues that his "testimony that the mobile home was sold 'as is' is the only reliable evidence

heard at trial as to the condition the mobile home was sold in."

{¶ 56} As this Court has previously noted:

Three classes of simple contracts exist: "express, implied in fact, and implied in law." *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6, 540 N.E.2d 257. " '[A]n express contract connotes an exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound.' *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 380[, 620 N.E.2d 996]. 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414." (Citations omitted.) *LaPoint v. Templeton*, Fulton App. No. F–07–014, 2008-Ohio-1792, at ¶ 24.

"However, where oral contracts are concerned, the 'terms of an oral contract may be determined from "words, deeds, acts, and silence of the parties." ' " *Id.* at ¶ 25, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 15, quoting *Rutledge v. Hoffman* (1947), 81 Ohio App. 85, 36 O.O. 405, 75 N.E.2d 608, paragraph one of the syllabus. " '[S]eldom, if ever, does the evidence in proof of an oral contract present its terms in the exact words of offer and acceptance found in formal written contracts. And no such precision is required. It is sufficient if the intent is disclosed by word, deed, act, or even silence.' * * * Therefore, while mutual

assent is usually manifested by offer and acceptance, in oral contracts, mutual assent may be manifested by other acts or failures to act." *LaPoint,* 2008-Ohio-1792, at ¶ 25, quoting *Rutledge v. Hoffman*, 81 Ohio App. at 86.

*Key Bank Natl. Assn. v. Mazer Corp.*, 188 Ohio App.3d 278, 2010-Ohio-1508, 935 N.E.2d 428, ¶ 32-33 (2d Dist.).

{¶ 57} Regarding Robert's assertion that the trial court erred in failing to enforce the October 15, 2014 document, we see no abuse of discretion. While Robert argues that the $3,800.00 purchase price of the mobile home "was an essential term of the contract," the October 25, 2014 document does not reflect a purchase price at all or any intention to sell the mobile home. Further, while Robert repeatedly refers to the document as a "Lease-Purchase Agreement," the section under Shawn's identifying information is entitled "* * * * RENT * * * *," which is further inconsistent with the handwritten "Sold As is" at the top of the document. As the trial court additionally noted, there is no suggestion that Shawn paid any consideration for the mobile home; Robert acknowledged that he received cash from Robyn. Accordingly, we agree with the trial court that the October 15, 2014 document "is not on its face a clear contract as to the purchase of the mobile home."

{¶ 58} Deferring to the trial court as an independent fact-finder, we further agree with the trial court's determination that Robyn "paid money to [Robert] in exchange for the sale of the mobile home." In other words, a valid oral contract existed between Robyn and Robert for the sale of the mobile home. There was competent evidence, namely Robyn's testimony, that she paid Robert $3,100.00 as a down payment on the mobile home from her inheritance, and that the mobile home proved to be uninhabitable, contrary

to Robert's initial representations to her. We agree with the trial court's conclusion that Robert's "breach of the verbal contract for the sale of the mobile home entitles" Robyn to the $3,000.00 in damages that she sought in her complaint, which were attributed to her down payment. Having concluded that the trial court did not abuse its discretion in awarding judgment in favor of Robyn, Robert's remaining three assignments of error are overruled. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.


Copies mailed to:

Maria Rabold
Jose Lopez
Hon. Robert W. Rettich, III